WeldoN, J.,
delivered the opinion of _the court:
The facts show that the brig Sea Nymph, Hastie, master, ■sailed on or about the 17th of April, 1797, from the port of Jeremie, on a commercial voyage, bound for Cape Nicola Mole, whence she sailed May 14, 1797, bound for Philadelphia, laden with a cargo of sugar and coffee. The Sea Nymph *374 sailed from the Mole under a British ship as a convoy, and while pursuing her voyage was seized on the high seas on the next day, May 15, 1797, by the French privateer Le General Toussaint, and carried into the port of St. lago de Cuba, and both vessel and cargo were condemned by the French prize court, sitting at Cape Francois.
The grounds of condemnation as set forth in the decree areas follows:
“Considering the papers above mentioned establish and prove that' the said brig has been captured loaded with produce taken on board at Jeremie; considering that Jeremie is-one of the ports of the colony in rebellion against the laws of the .Republic, under the protection of the British Government, and declared in a state of permanent siege by the decree of' the-commission of the 6th Nivose last.”
Upon the foregoing the court decrees the condemnation of the vessel and cargo as good prize.
It is contended on the part of the defendants that the condemnation of said vessel by the French court was lawful and proper, notwithstanding that it is not alleged as a ground in the condemnation that the ship at the time of seizure was sailing under a belligerent vessel as a convoy.
It has been repeadedly held by this court that if from -the evidence in the case a sufficient ground of condemnation appears, the fact that such ground is not mentioned in the-decree of condemnation would not have prevented France and will not now prevent the U nited States from insisting that although the decree is deficient in the allegations of good grounds for condemnation, yet if the evidence shows other grounds upon which the condemnation might have been made there was no liability against France, and hence there can be none against the United States.
In the case of the ship Joanna, Boggs, master (24 0. Cls. R., l-9é), it is said :
“ Before considering this subject we may say that we are of the opinion that should a good reason for the condemnation of a vessel appear in the record before the prize court, although that reason may not have been explicitly and specifically alleged by that tribunal as the reason for the result reached by them, we shall still uphold the decision of the tribunal.”
*375 In the case of Stewart, administrator (schooner Nancy), against the United States (21 C. Cls. R., 99), the question of the legal effect of being under convoy at the time of seizure was considered and decided by this court. It is said in that case that “the substantial ground of condemnation is found in the fact that when the Nancy was captured she was actually under convoy. The nature or the nationality o,f the convoy is not shown, but the history of the time forces the presumption that it was an English armed vessel, either public or, what is more likely, private. Jeremie was in the possession of the English, and so was the Mole.” It is not shown in this case as to the nationality or character of the convoy, but judging from the circumstance of the seizure and the analogy to the facts in the case of the Nancy, the presumption arises that the convoy was either an English armed vessel or an English privateer.
It is said in substance in that case that there is no judicial decision in the United States upon the question presented by the record, and that this court must now in the first instance, in the history of this litigation, consider and determine the legal effect of sailing under a convoy at the time of seizure. In the case of the Nancy the case of the Nereid (9 Cranch, 389) is cited, and quotation is made from the opinion of Chief Justice Marshall, page 432, in which it is said, “The general rule and incontestible principle is that a neutral has a right to employ a belligerent carrier, who exposes himself to capture and detention but not to condemnation.”
In the case of the Atlanta (3 Wheaton, p. 409), Mr. Justice Johnson, distinguishing between the case of neutral goods laden upon belligerent vessels and neutral vessels under convoy, said:
“A convoy is an association for a hostile object. In undertaking it, a nation spreads over the merchant vessel an immunity from search which belongs only to a national ship;.and by joining a convoy every individual ship puts off her pacific character and undertakes for the discharge of duties which belong only to the military and marine and adds to the numerical if not the real strength of the convoy. If, then, the association be voluntary, the neutral, in suffering the fate of the whole, has only to regret his own folly in wedding his fortune to theirs; or, if involved in the aggression or opposition of *376 the convoying vessel, he shares the fate which the leader of his own choice either was or would have been made liable to in case of capture.”
In the case of the Four Sisters, McLean, master, No. 186, this court decided, as a conclusion of law, that the seizure and condemnation was not illegal, and that the owners and insurers had no claim of indemnity, therefore, on the French Government prior to the ratification of the convention of the 30th of September, 1800; that the said claim was not relinquished to France by the Government of the United States, and that the claimants are not entitled to recover from the United States, as the Four Sisters was well armed, and when taken was vigorously resisting search. No opinion was given in that case, but in the case of the Nancy it is said, in substance, that the authorities agree that visit and search in time of war are belligerent rights of self-preservation, to which the neutral must submit; and that actual resistance to the exercise of such right authorizes condemnation; that voluntary submission to a belligerent convoy is constructive resistance, which authorizes seizure; that up to that point authorities are united, but they are not agreed as to the result of constructive resistance — whether it raises the conclusive presumption or presents only suspicious circumstances capable of explanation. It is contended that circumstances might justify a neutral being in the company of a convoy, and, if satisfactory, might excuse such neutral from the consequences of condemnation. In this case there are no explanations or circumstances which tend in their legal effect to excuse or mitigate the results growing out of the constructive resistance.
The court held in the case of the Nancy that the weight of authority was against the claimant, and that if a neutral vessel is captured when under the protection of an enemy’s vessel of war it is for that reason good and lawful prize.
In the case of the Maria, reported in 1 C. Rob., 340, it was held that a vessel sailing under convoy of an armed ship for the purpose of resisting visitation and search was subject to condemnation because of that fact. It is said in the opinion of the court, by Sir William Scott:
“How stands it by the general law? I do not say that cases may not occur in which a ship may be authorized by the *377 natural rights of self-preservation to defend itself • against extreme violence threatened by a cruiser grossly abusing his commission, but where the utmost injury threatened is the being carried in for inquiry into the nearest port, subject to a full responsibility in costs and damages if this is done vexatiously and without just cause, a merchant vessel has not a right to sajr for itself (and an armed vessel has no right to say for it), ‘I will submit to no such inquiiy, but I will take the law into my own hands bjr force.’ What is to be the issue if each neutral vessel has a right to judge for itself in the first instance whether it is rightly detained and to act upon that judgment to the extent of using force? Surely nothing but battle and bloodshed, as often as there is anything like an equality of force or equality of spirit.”
377
It is said by Sir Sherston Baker, in his work on international law, section 17, page 289, in substance, that the question whether neutral vessels under enemy’s convoy are liable to capture and condemnation has been elaborately discussed, and that in the case of the Sampson the court of appeals, in England, decided that sailing under an enemy’s convoy was a conclusive ground of condemnation. In that connection it is said in substance, by the same distinguished author, that the exercise of the right of search within its true limits implies the right of using lawful force if necessaiy in its execution the same as in the execution of a civil process on land. This right on one side implies the corresponding obligation and -dutj>' on the other of submission; and as the belligerent may lawfully apply his force to the neutral property for the purpose of ascertaining its chai’acter and destination, it follows, as a logical effect and necessity, that the neutral may not lawfully resist the lawful exercise of the right of search. (Sec. 11, p. 296.)
It is insisted by counsel for the claimant that it is not shown that at the time of the capture the ship was under convoy. In reply to that it may be said that it is shown by the decree that on the llth of May, 1797, the ship sailed under a British convoy, and that on the next day she was captured. It is a familiar principle of law that a condition once established is presumed to continue until it is shown that a change had taken place; and the burden of proof being on the claimant to .show that a change had taken place at the time of capture, the *378 presumption prevails with its legal effects against the claimant in the absence of such a showing.
For the reasons above stated the court decides, as a conclusion of law, that the seizure and condemnation were lawful and that the owners and insurers had no valid claim for indemnity therefor upon the French Government prior to the ratification of the convention between the United States and the French Republic concluded on the 30th day of September, 1830, and that the claims were not relinquished to France by the Government of the United States by said treaty in part consideration of the relinquishment of certain national claims of France against the United States, and that the claimants are not entitled to recover from the United States.
The facts in detail, with a copy of this opinion, will be certified to Congress in accordance with the statute.